UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DANH Y. LE,

    Petitioner,

        v.    CAUSE NO. 3:25-CV-1045-CCB-SJF

THOMAS HORGAN, TODD M. LYONS,
KRISTI NOEM, PAMELA BONDI, and
WARDEN,

    Respondents.

## OPINION AND ORDER

Immigration detainee, Danh Y. Le, by counsel filed an amended petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging he is unlawfully confined in violation of the laws or Constitution of the United States. ECF 24. Respondents have answered the petition, and Le filed a reply. ECF 36, ECF 37. The petition is ready to be decided.

### A. Background

Le is a native of Vietnam who entered the United States as a refugee in 1980 and later became a lawful permanent resident. In the mid-1990s, he says he was convicted of a crime that made him deportable under the immigration laws of that time. While serving his criminal sentence, he was placed in deportation proceedings and was issued a final order of removal (deportation) on October 26, 1995. He did not appeal the 1995 order, and it became final.

Le reports that upon the conclusion of his criminal sentence, immigration authorities took him into custody in order to deport him. However, removal was not feasible because Vietnam would not issue travel documents; Le asserts Vietnam has historically been reluctant to accept the return of certain long-time residents of the United States or individuals with old removal orders, especially those who fled Vietnam decades ago. With his removal being unlikely, Le was released in 1997 after 18 months' detention pursuant to an Order of Supervision.

Le alleges that over the next 28 years, he lived in the United States and complied with all the conditions of supervision. Over that time, he married a United States citizen and he has step-children who are United States citizens. He says he has not committed any new offenses since his release, and Vietnam still remains unwilling to issue travel documents for his removal.

In June 2025, Immigration and Customs Enforcement (ICE) revoked Le's Order of Supervision and re-detained him, despite, he says, of there being no substantial change in circumstances. His immigration records state that "[p]ursuant to the new policy change in Pre-1995 Vietnamese nationals, it appears there is SLRRFF [a significant likelihood of removal in the reasonably foreseeable future] in this case." ECF 36-1 at 15. Le alleges the Notice of Revocation did not comply with agency regulations or due process.

In July 2025, while detained, Le filed a motion to reopen his immigration case, seeking to have his removal order set aside and to file for protection under the United Nations Convention Against Torture (CAT). ECF 1-18 at 2-5. His motion to reopen was

granted on July 8, 2025, for purposes of allowing him to apply for deferral of removal under CAT. *Id.* at 19-20. The immigration judge did not find a basis to reopen the removal order. The CAT deferral was denied on the merits in late July 2025, and Le timely appealed to the Board of Immigration Appeals. That BIA appeal remains pending.

After Le's immigration case was reopened, Le requested a custody redetermination hearing (a bond hearing) under 8 C.F.R. § 1236 from the immigration court. ECF 1-9 at 2-23. The immigration judge denied bond in a proceeding that Le argues violated due process because the immigration judge wrongly applied the mandatory detention provision in 8 U.S.C. § 1226(c) that is applicable to noncitizens with certain criminal convictions. ECF 1-5 at 2-3. Le appealed the bond denial to the BIA, and the appeal remains pending. Le fears that his transfer to Miami Correctional Facility was done in order to facilitate his removal, which he says cannot occur while his CAT appeal is pending. He alleges he has been detained nearly five months after his re-arrest and the detention is potentially indefinite.

## B. Analysis

The first issue to be decided is what is the statutory basis for Le's detention: 8 U.S.C. § 1226 or 8 U.S.C. § 1231. When Le was arrested in June 2025, he was subject to a final order of removal and at liberty on an Order of Supervision. Thus, his re-detention was governed by 8 U.S.C. § 1231(a) and corresponding regulations. *See* 8 U.S.C. §§ 241.4, 241.13. However, after he was detained, he successfully moved to reopen his immigration proceedings. At this point, respondents argue that the basis for Le's

3

detention switched to § 1226—the statute governing detention "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Le, on the other hand, argues that because the reopening was limited and did not erase the prior final order, he remains detained under § 1231—the statute governing detention during the "removal period" and beyond. 8 U.S.C. § 1231(a).

The parties devote very little time to briefing what is the key question in this case—whether Le's detention is governed by § 1226 or § 1231. Most of the parties' briefing concerns whether Le's conviction from the 1990s makes him subject to mandatory detention under § 1226(c), which, subject to limited exceptions, requires noncitizens who have been convicted of certain crimes to be detained pending a decision on removal. This is puzzling because the Board of Immigration Appeals has already spoken on this issue and concluded that "[8 U.S.C. § 1226(c)] requires mandatory detention of a criminal alien only if he or she is released from non-DHS custody after October 8, 1998, the last day that the [Transition Period Custody Rules] were in effect." *Matter of Garcia Arreola*, 25 I. & N. Dec. 267, 269 (BIA 2010). Le was released from criminal custody before 1998. Further, there is no indication that the immigration judge relied on § 1226(c) to justify Le's detention. The immigration judge's decision denying bond did not mention § 1226(c), saying instead:

> Respondent is a danger to society. Respondent is also a flight risk. No amount of bond will ensure that Respondent will appear for immigration proceedings in the future.

ECF 1-5 at 2. Notably, in Le's second motion for a bond redetermination, he argued only the discretionary factors and did not mention §1226(c). ECF 1-14 at 2-14. That motion

4

was denied because the immigration judge determined he had not shown a change in circumstance, not that the immigration judge lacked jurisdiction due to § 1226(c). ECF 36-1 at 24-25. Therefore, the arguments regarding § 1226(c) are irrelevant to the petition.

Instead, the court looks to the effect of Le's motion to reopen on the statutory basis for his detention. Looking first at the text of the statutes, § 1226(a) allows for detention "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Section 1231, on the other hand, governs detention starting from a mandatory 90-day "removal period," defined by statute:

> The removal period begins on the latest of the following:
>
> **(i)** The date the order of removal becomes administratively final.
>
> **(ii)** If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> **(iii)** If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B). If the noncitizen is not removed during the removal period, further detention is authorized "beyond the removal period" under certain conditions, *see* 8 U.S.C. § 1231(a)(6), subject to the limitation that a noncitizen's detention after the removal period is limited "to a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

Neither statute discusses the effect of a motion to reopen on the statutory basis for detention. The regulations governing § 1231 state that when a motion to reopen is

5

granted, even if limited to withholding or deferral of removal, custody switches to § 1226:

> An alien who has filed a motion to reopen immigration proceedings for consideration of relief from removal, including withholding or deferral of removal pursuant to 8 CFR 208.16 or 208.17, shall remain subject to the provisions of this section [governing detention after a final order of removal] *unless* the motion to reopen is granted. [§ 1226] and 8 CFR 236.1 govern custody determinations for aliens who are in pending immigration proceedings before the Executive Office for Immigration Review.

8 C.F.R. § 241.4(b)(1) (emphasis added); *see also* 8 C.F.R. § 1003.23 (procedures governing reopening before the immigration court). However, the court no longer owes any deference to agency determinations interpreting statutes. *See Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). Therefore, the court independently looks to whether Le's current detention falls under § 1226 or § 1231 following the reopening of his immigration proceedings.

Under the plain language of the statutes, Le's detention does not comfortably fit under § 1226, authorizing detention "pending a decision on whether the alien is to be removed from the United States," because there is no question about whether he is to be removed from the United States. 8 U.S.C. § 1226(a). That part of his removal order remains undisturbed (and there is no indication that the immigration judge's ruling on that issue is being challenged on appeal). Immigration law makes clear that the question of removal is distinct from the question of withholding of removal under CAT. *See Nasrallah v. Barr*, 590 U.S. 573, 582 (2020) ("[T]he immigration judge's or the Board's ruling on a CAT claim does not affect the validity of the final order of removal and therefore does not merge into the final order of removal" for purposes of the proper standard of review); *see also Johnson v. Guzman Chavez*, 594 U.S. 523, 540 (2021) ("In

6

*Nasrallah* v. *Barr*, the majority explained that the grant of withholding relief under CAT 'does not disturb the final order of removal,' 'affect the validity of the final order of removal,' or otherwise 'merge into the final order of removal.'"). Note that this analysis does not impact the finality of an initial order of removal where withholding or deferral of removal is at issue; that removal order, by statute, does not become administratively final until the Board of Immigration Appeals has decided the case (or the time to appeal has expired), even if the only matter in contention is withholding or deferral of removal. *See* 8 U.S.C. § 1101(a)(47)(B). This analysis looks to whether later actions serve to make a final removal order nonfinal, such that a decision on whether a noncitizen is to be removed from the United States can be considered "pending." 8 U.S.C. § 1226(a).

Seventh Circuit caselaw supports the idea that an immigration case can be only partially reopened. The Seventh Circuit has said that "the grant of a motion to reopen vacates the previous order of deportation or removal and reinstates the previously terminated immigration proceedings." *Bronisz v. Ashcroft*, 378 F.3d 632, 637 (7th Cir. 2004). But in a later case, the Seventh Circuit clarified that the situation in *Bronisz* was one in which the entire case was reopened, and in other situations, a motion to reopen does not necessarily reopen the entire case. *See Turkhan v. Lynch*, 836 F.3d 843, 847 (7th Cir. 2016) ("Turkhan urges that there is no such thing as a partial reopening and that the Board therefore committed legal error when it purported to take such an action. There is no basis for his contention."). Thus, an immigration case may be reopened without disturbing the finality of the underlying removal order.

In looking at the motion to reopen, Le sought to reopen the entire proceedings in order to have the underlying removal order set aside and to seek CAT relief. ECF 1-18 at 2-5. The immigration judge granted his motion only insofar as it was related to CAT relief and found there was no basis to disturb the underlying removal order. ECF 1-18 at 19-20. Thus, it appears that this is a partial reopening, and the underlying removal order is not subject to being disturbed.

This situation, therefore, is like the one in *Johnson v. Guzman Chavez*, 594 U.S. 523 (2021). In *Guzman Chavez*, noncitizens had re-entered the United States after having been previously removed and, by statute, "the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed." *Id.* at 529-30 (quoting 8 U.S.C. § 1231(a)(5)). Yet, noncitizens subject to a reinstated order of removal may still seek withholding of removal if they assert a valid basis to fear being returned to the designated country of removal. *Id.* at 530-31. The Supreme Court held that these noncitizens in withholding-only proceedings still fell under § 1231, and not § 1226, based on the language of the statute. *Id.* at 534-35. Each had been "ordered removed" and those "reinstated orders are not subject to reopening or review." *Id.* at 534. Further, the reinstated removal orders were "administratively final," meaning that the "*agency's* review proceedings" of the removal order is complete; "there is nothing left for the BIA to do with respect to the removal order other than to execute it." *Id.* at 534-35. The Court emphasized that withholding-only relief does not affect the underlying removal order. "If an immigration judge grants an application for withholding of removal, he prohibits DHS from removing the alien *to* that particular country, not *from* the United States. The

8

removal order is not vacated or otherwise set aside. It remains in full force, and DHS retains the authority to remove the alien to any other country authorized by the statute." *Id.* at 536.

It is true that Le's situation differs from the noncitizens in *Guzman Chavez* in that the noncitizens there were statutorily prohibited from challenging their removal orders, whereas Le was allowed to move to reopen his removal proceedings. But, ultimately, Le's attempt to reopen his removal proceedings was unsuccessful insofar as he challenged his validity of his removal order. So, functionally, Le is in the same situation as the noncitizens in *Guzman Chavez*—subject to a long-standing order of removal but seeking relief in the form of withholding of removal.

Respondents argue that "[t]here is no legal authority supporting that a case remains in post-final removal order status after the proceedings are reopened." ECF 36 at 10. But at the same time, they don't provide any legal authority for the case to be considered as "pending a decision on whether the alien is to be removed from the United States" following a limited reopening. 8 U.S.C. § 1226(a). Respondents further argue that Le is not subject to a final removal order because he cannot be removed immediately, as his decision to reopen his immigration case and to pursue an appeal have "effectively stayed removal from this country." ECF 36 at 10. Neither party, however, provides authority that Le cannot be removed to a country other than Vietnam while his appeal is pending (provided he is provided appropriate due process), and so Le is in the same situation as the noncitizens in *Guzman Chavez*.

9

### C. Conclusion

This doesn't mean that Le must be released. Instead, his detention is governed by the standard set by the Supreme Court that "limits an alien's post-removal-period detention [under 8 U.S.C. § 1231(a)] to a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). Nor is it unfair to ask respondents to show a reasonable foreseeability of removing Le to Vietnam, when presumably all efforts to effectuate his removal to Vietnam are on hold while his appeal is pending. The initial decision to re-detain him under § 1231 must have been based on a change in circumstance that makes removal reasonably foreseeable. *See Pho v. Noem*, No. 3:25-CV-977-CCB-SJF, 2025 WL 3750684, at *5 (N.D. Ind. Dec. 29, 2025) (Brisco, J.). Those new circumstances are applicable to whether his removal is reasonably foreseeable. Therefore, respondents must provide evidence that removal is reasonably foreseeable or explain why they do not bear the burden to establish that following Le's re-detention.

Because this issue was not squarely presented in the briefing, the court will allow respondents to file a supplemental brief addressing the validity of Le's detention under 8 U.S.C. § 1231(a)(6).

For these reasons, the court:

(1) **ORDERS** respondents to file a brief status report by **February 24, 2026**, with a continuing obligation to supplement with new information, addressing whether any country besides Vietnam is being considered for removal;

(2) **ORDERS** respondents to file a supplemental brief by **March 2, 2026**, addressing whether removal to Vietnam or any other country is reasonably foreseeable; and

(3) **ORDERS** that any reply to the supplemental brief shall be filed by **March 9, 2026**.

SO ORDERED on February 20, 2026.

/s/*Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT